UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>   vs.<br><br>MANAEN DEAN MATTHEWS,<br><br>                    Defendant. | CR. 19-50035-JLV<br><br><br><br>ORDER |

**INTRODUCTION**

Defendant Manaen Dean Matthews filed a motion for compassionate release.[1] (Docket 50). Pursuant to the October 21, 2020, Amended Standing Order 20-06, the Federal Public Defender for the Districts of South Dakota and North Dakota ("FPD") and the United States Attorney for the District of South Dakota filed records and submissions on his motion. (Dockets 51 & 52). For the reasons stated below, defendant's motion is denied.

**AMENDED STANDING ORDER 20-06**

Amended Standing Order 20-06,[2] captioned "Establishing a Procedure for Compassionate Release Motions Under the First Step Act," put in place "a procedure for submission and consideration of compassionate release motions

---

[1] The motion was submitted by a non-resident, non-admitted attorney who did not seek to appear *pro hac vice* in this court. The court reviews the submission as a *pro se* motion.

[2] See https://www.sdd.uscourts.gov/socraa. ("ASO 20-06").

under the First Step Act, 18 U.S.C. § 3582(d)(l)(A), in the wake of the spread of the COVID-19 virus into the federal prison system." (SO 20-06 at p. 1). By the standing order, the FPD and the United States Attorney for the District of South Dakota are "to place [the defendant] into one of four categories[.]" Id.

¶ 4.   Those categories are:

    a.    High Priority Cases where there exists some combination of: (i) medical issues that correspond to the categories outlined in the commentary to U.S.S.G. § l.B.1.13; (ii) recognized COVID-19 risk factors in the inmate's medical history; and/or (iii) imprisonment in a federal facility known to have a serious COVID-19 outbreak in its population. . . .

    b.    Intermediate Priority Cases where identified medical issues and/or COVID-19 risk factors and/or institutional concerns are less extreme than High Priority Cases.

    c.    Low Priority Cases where there are no identifiable medical issues or COVID-19 risk factors.

    d.    Unknown Risk Cases where there is a lack of sufficient information to categorize the request for compassionate release.

Id. The FPD and U.S. Attorney are to "immediately report the categorization . . . to the Clerk of Court and the Probation Office." Id.

## MR. MATTHEWS' CLASSIFICATION

On July 27, 2020, the FPD and the U.S. Attorney filed a notice designating Mr. Matthews as a Low Priority case. (Docket 51).

## FACTUAL BACKGROUND

Mr. Matthews pled guilty to wire fraud, conspiracy to defraud the United States and false claims in violation of 18 U.S.C. §§ 1343, 286, and 287.

2

(Dockets 11 & 14).  On July 25, 2019, Mr. Matthews was sentenced to a total term of imprisonment of 78 months on the three counts followed by three years of supervised release.  (Dockets 27 & 28 at pp. 2-3).  Mr. Matthews was ordered to pay restitution in the amount of $523,250.00 to the Internal Revenue Service.  (Docket 28 at p. 6).  An amended presentence investigation report ("PSR") indicated Mr. Matthew's guideline range was 121 to 151 months imprisonment based on a total offense level of 32 and his criminal history category I.  (Docket 23 ¶ 53).  At sentencing, the court adjusted the total offense level to 30 resulting in a guideline range of 97 to 121 months in custody.  (Docket 35 at pp. 43-44).  Pursuant to the plea agreement, the government agreed to recommend a sentence of not more than 78 months incarceration.  (Docket 11 at p. 5).  The court sentenced Mr. Matthews to the recommended sentence.

Mr. Matthews is currently an inmate at FCI Fort Dix, a low security correctional institution, in Joint Base MDL, New Jersey.  Fed. Bureau Prisons, https://www.bop.gov/inmateloc/ (last checked May 10, 2021).  The total inmate population at FCI Fort Dix is currently 2,646 persons.  As of May 10, 2021, there were 2 active COVID-19 cases among inmates and 2 among staff at FCI Fort Dix.  https://www.bop.gov/coronavirus/ (last checked May 10, 2021).  There have been two inmate deaths as a result of COVID-19 and 1798 inmates and 91 staff have recovered from COVID-19 at FCI Fort Dix.  Id.

Mr. Matthews has a scheduled release date of October 19, 2024. (Docket 52 at p. 64). Mr. Matthews served approximately 24 months of his sentence and under his current BOP status he is eligible for home detention on April 19, 2024. Id. at pp. 64-65. Mr. Matthews is 36 years old. Id. at p. 63.

## MR. MATTHEWS' MOTION

Mr. Matthews' motion seeks compassionate release on the basis of extraordinary and compelling reasons in light of his race, medical conditions, and confinement during the COVID-19 pandemic. (Docket 50 at pp. 1-3). Mr. Matthews alleges his status as an African American male increases his risk for severe illness from COVID-19. Id. at p. 2. Mr. Matthews contends his medical conditions of psoriasis, Vitamin D deficiency, and other lab findings such as high creatine and a slightly elevated liver enzyme also heighten his risk.[3] Id. at pp. 1-2, 7. Mr. Matthews asserts he is a good candidate for early release or home confinement because he is non-violent, had no prior criminal record and has exhibited proper conduct in custody. Id. at pp. 1-2.

On August 11, 2020, the FPD docketed a notice of intent not to supplement Mr. Matthews' motion and the United States did not respond to Mr. Matthews' motion.

The court reviewed Mr. Matthews' medical records, which confirm he is generally healthy. (Docket 52 at pp. 12-27). After entering BOP custody, Mr.

---

[3]The court notes the medical record Mr. Matthews relies upon is dated November 11, 2016, and does not reflect his current condition. See id. at p. 7.

4

Matthews underwent a comprehensive history and physical on September 17, 2019.  Id. at pp. 16-27.   No health problems were identified at that time.  Id. Mr. Matthews' list of current health problems includes myopia (near-sighted), COVID-19 test negative, HCV negative and HIV negative.  Id. at 35.  Mr. Matthews does not take any medications.  Id. at p. 32.

## ANALYSIS

### Administrative Exhaustion

Section 3582(c) permits the district court to consider a prisoner's request for compassionate release after he exhausts the administrative remedies mandated by the statute.  18 U.S.C. § 3582(c)(1)(A)(i).  Mr. Matthews made two requests for compassionate release that were denied by the warden on May 15, 2020 and July 21, 2020.  (Docket 50 at pp. 5-6; Docket 52 at p. 66).  The court finds Mr. Matthews exhausted the administrative process and addresses the merits of his request.

### Extraordinary and Compelling Reasons

"Section 3582(c)(1)(A)(i) does not attempt to define the 'extraordinary and compelling reasons' that might merit compassionate release."  United States v. McCoy, 981 F.3d 271, 276 (4th Cir. 2020).  That task was left to the United States Sentencing Commission.  See 28 U.S.C. § 994(t).  Prior to the First Step Act, the Sentencing Commission established four categories for "extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."  See id.  Those

categories generally focus on the defendant's age, medical condition, family situation and any other reasons the BOP deems to be extraordinary and compelling. U.S.S.G. § 1B1.13 comment. n.1. The four categories have not been updated since December 2018 when the First Step Act became law.[4]

The court previously surveyed the status of the law as to a court's authority under the First Step Act. E.g., United States v. Thunder Hawk, CR. 14-50008, 2021 WL 253456, at *5 (D.S.D. Jan. 26, 2021); United States v. Magnuson, CR. 15-50095, 2020 WL 7318109, at *4-5 (D.S.D. Dec. 11, 2020); United States v. King, CR. 15-50050, 2020 WL 6146446, at *4-5 (D.S.D. Oct. 20, 2020). A summary of that survey is sufficient here.

The Second Circuit identified the question at the heart of these cases, which is "whether the First Step Act allows courts independently to determine what reasons, for purposes of compassionate release, are 'extraordinary and compelling,' or whether that power remains exclusively with the BOP Director as stated in Application Note 1(D)." United States v. Brooker, 976 F.3d 228, 237, 234 (2d. Cir. 2020). Like the United States Courts of Appeals for the

---

[4]The United States Sentencing Commission lacks a quorum and "currently has only two voting members, two short of the four it needs to amend the [U.S.S.G.]." United States v. Marks, 455 F. Supp. 3d 17, 24 (W.D.N.Y. 2020) (references omitted).

Second, Fourth, Sixth and Seventh Circuits,[5] this court held it retains its independent authority "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [the court] in motions for compassionate release."  E.g., Magnuson, 2020 WL 7318109, at *5 (quoting Brooker, 976 F.3d at 237); see also McCoy, 981 F.3d at 283 ("As of now, there is no Sentencing Commission policy statement 'applicable' to the defendants' compassionate-release motions, which means that district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction."); United States v. Jones, 980 F.3d 1098, 1111 (6th Cir. 2020) ("In cases where incarcerated persons file motions for compassionate release, federal judges . . . have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13."); and United States v. Gunn, 980 F.3d 1178, 1180 (7th Cir. 2020) (agreeing with the Second Circuit that the Guidelines Manual "does not curtail a district judge's discretion").

The purpose of the First Step Act was to expand the availability of compassionate release based on judicial findings of extraordinary and compelling reasons without being restricted to those categories identified by the

---

[5]The United States Court of Appeals for the Eighth Circuit had several opportunities to address this issue but declined to do so.  United States v. Vangh, 990 F.3d 1138, 1141 n.3 (8th Cir. 2021); United States v. Loggins, Jr., 966 F.3d 891 (8th Cir. 2020); and United States v. Rodd, 966 F.3d 740 (8th Cir. 2020).

Sentencing Commission or the rationale used by the BOP before the passage of the First Step Act.

Turning to that task, the court finds no extraordinary or compelling reasons to warrant Mr. Matthews' early release.  Mr. Matthew is relatively young and healthy.  He does not have any notable medical conditions, let alone any of the ones identified by the Centers for Disease Control and Prevention ("CDC") as increasing the risk of a severe illness from COVID-19. See People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Feb. 3, 2021).

The court considered the concern that Mr. Matthews' race is an additional risk factor for a poor outcome from COVID-19.  The CDC indicates there is evidence "some racial and ethnic minority groups are being disproportionately affected by COVID-19."  Health Equity Considerations and Racial and Ethnic Minority Groups, https://www.cdc.gov/coronavirus/2019-ncov/community/health-equity/race-ethnicity.html (last updated Feb. 12, 2021).  Such inequities have been traced to social determinates such as poverty, housing, and healthcare access and utilization.  Id.  These are not persuasive factors while Mr. Matthews is in BOP custody where his physical needs are met and he has equal access to healthcare.

The court also recognizes the BOP's recent implementation of a COVID-19 vaccination program.  BOP: COVID-19 Update, https://www.bop.gov/

8

coronavirus/ (last checked May 10, 2021). As of May 10, 2021, 166,348 doses have been administered system wide. Id. Those numbers are increasing each day. At FCI Fort Dix 247 staff and 1480 inmates were fully inoculated as of May 10, 2021. Id. According to the BOP, those inmates who wish to receive the vaccine will have an opportunity to do so, but

> [w]hen an institution receives an allocation of the vaccine, it is first offered to full-time staff at that location, given that staff–who come and go between the facility and the community–present a higher potential vector for COVID-19 transmission. Vaccinating staff protects fellow staff, inmates at the facility, and the community.

Id.

Despite the expanded authority under the First Step Act, the court finds Mr. Matthews has not met his burden of proof by presenting "extraordinary and compelling reasons" warranting a sentence reduction under § 3582(c)(1)(A)(i).

### 3553(a) Factors

The court has reviewed the § 3553(a) factors and concludes they do not support relief. A detailed analysis of the factors is unnecessary. Mr. Matthews was sentenced to 78 months custody. Mr. Matthews' offenses were serious, involving losses of more than three million dollars, requiring restitution of more than $500,000 to the Internal Revenue Service and filing false tax returns for more than 700 individuals. (Dockets 26 ¶¶ 5-10 & 35 at pp. 42-43). His advisory guideline range as determined by the court at

sentencing was 97 to 121 months, much more significant than the sentence imposed. (Docket 35 at p. 44). Early release is not warranted.

## ORDER

No good cause having been proven, it is

ORDERED that defendant's motion for compassionate release (Docket 50) is denied.

Dated May 10, 2021.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE